800 So.2d 727 (2001)
STATE of Florida, Appellant,
v.
Justin GILSON, Appellee.
No. 5D 01-767.
District Court of Appeal of Florida, Fifth District.
December 7, 2001.
*728 Robert A. Butterworth, Attorney General, Tallahassee, and Angela D. McCravy, Assistant Attorney General, Daytona Beach, for Appellant.
James B. Gibson, Public Defender, and Nancy Ryan, Assistant Public Defender, Daytona Beach, for Appellee.
SHARP, W., J.
The state appeals a downward departure sentence after Gilson entered a no contest plea to all counts in two criminal cases.[1] The sentences imposed ran concurrently on five counts and were for 50.7 months in prison suspended on condition of successful completion of two years on community control, followed by three years on probation. *729 On the remaining counts, which were misdemeanors, the sentence was for time served. The sentences were substantially below the permissible sentencing range of 50.7 months to 49 years incarceration indicated by Gilson's scoresheet.
The state argues the record does not support the trial judge's findings on reasons given for the downward departure, or that the reasons given were legally sufficient. This is a close case. However, the facts of this case are unusual and there are mitigating factors noted by the trial judge, which support her decision to depart downwards. See Banks v. State, 732 So.2d 1065, 1067-1068 (Fla.1999).
The facts giving rise to the criminal charges in case number XXXX-XXXXX occurred on October 24, 2000. Gilson was intoxicated, and when he returned home late in the evening, his mother became very angry with him. In order to flee from her wrath, he went across the street to a neighbor's home. The neighbor, Nick Amos, was out of town. Gilson broke into the residence and into the garage apartment, in which Amos' daughter (Holly Van Nesse) lived. He took two firearms and threw them out of the window, or put them in the backyard. Then he climbed into a bed and went to sleep.
Van Nesse, who was also a friend of Gilson's mother, returned the next day and called the police from Gilson's house when she discovered an open door. Police found Gilson asleep in a bed in Amos' house, with cannabis in his possession. Gilson told the police he went to the Amos' house to sleep because he was not getting along with his mother. At the hearing, he told the court he regretted having had no chance to apologize to the victims, "and stuff."
At the sentencing hearing, Gilson's mother testified that the Amos' home is a kids' hangout during the summer. Gilson and his friend, Van Nesse's daughter and Amos' granddaughter, spent a great deal of time there.
The facts giving rise to case number XXXX-XXXXX occurred on January 14, 2001. Gilson, again intoxicated, took a Kia Sportage SUV which had been parked at a golf club with the doors open and the keys in it. When police officers attempted to stop him he refused to stop. He then stopped the vehicle, fled on foot, and resisted officers when they attempted to arrest him. Cannabis was also found in the vehicle.
At Gilson's sentencing, his mother testified about his problems with drugs and alcohol, and Gilson himself acknowledged that he had a problem in this area. His mother also testified that he had been taking Ritalin for attention deficit hyperactivity disorder ("attention deficit"), but it had been discovered that he had been incorrectly diagnosed and medicated. The judge commented that it was hard to imagine somebody already hyperactive being given something that would speed them up.
In imposing the downward departure sentence, the trial court stated:
The Court understands this is a departure sentence; the Court believes that the capacity of the defendant to appreciate the criminal nature of the conduct or to conform that conduct to the requirements of law was substantially impaired. Frankly, the Court also believes that, at that time of the offense, the defendant was too young to appreciate the consequences of the offense.
The court also said the offenses were mitigated by the factual setting in which they were performed and that Gilson did them in an unsophisticated manner.
The written reasons given by the judge were twofold: 1) the capability of the defendant to appreciate the criminal nature of the conduct or to conform that conduct *730 to the requirements of law was substantially impaired; and 2) at the time of the offense, the defendant was too young to appreciate the consequences of the offense.
It is not fatal to Gilson that not all of the stated reasons were set down in writing. See Pease v. State, 712 So.2d 374 (Fla.1997). However, they must be supported by substantial competent evidence,[2] and at least one must be legally sufficient.[3]
It appears from this record that the first written reason given by the trial judge was legally insufficient because it was primarily based on Gilson's impairment due to his substance abuse or addiction, at the time the crimes were committed. The legislature has expressly determined that this is no longer a valid reason for departure,[4] even though in fact, as in this case, intoxication played a role in both of the criminal incidents.[5]
The other written reason, that Gilson was too young to appreciate the consequences of the offenses, and the court's stated reason that the crimes were committed in an unsophisticated manner based on the way in which they were accomplished, are both legally sufficient reasons under the statute. § 921.0026(2)(c), (j) and (k), Fla. Stat. Those provisions provide:
(c) The capacity of the defendant to appreciate the criminal nature of the conduct or to conform that conduct to the requirements of law was substantially impaired;
* * *
(j) The offense was committed in an unsophisticated manner and was an isolated incident for which the defendant has shown remorse;
* * *
(k) At the time of the offense the defendant was too young to appreciate the consequences of the offense.
The next question is whether or not these reasons have sufficient support in the record. Gilson's age being 18, alone is not sufficient. But there was testimony that Gilson had suffered from attention deficit problems, and was erroneously diagnosed as having that condition.[6] He was prescribed Ritalin, a stimulant, which is known to aggravate symptoms of anxiety tension and agitation. See Physicians Desk Reference (2001). Adverse reactions include nervousness and insomnia. Id. This bolsters the court's conclusion that Gilson is a very emotionally immature 18 year old. Emotional immaturity coupled with chronological young age is a sufficient basis to allow a sentencing judge to depart downwards.[7]
It is also apparent that the manner in which Gilson committed the two felony *731 burglaries and theft of the two firearms was not only unsophisticated, but pathetic and laughable. These four offenses account for 91.2 of the 95.6 sentencing points in this case. The record establishes without dispute that Gilson broke into the residences and garage apartment primarily to find a bed to sleep in, and like Goldilocks, was asleep in his neighbor's bed when found by the police the following day. His theft of the weapons consisted only of throwing them out a window, or putting them outside, in the backyard, a place from which he never sought to retrieve them. He was also the friend of a child of the neighbor's household which he brokeinto, and he had often been a guest in that home.
This scenario is such a far cry from the typical burglary of a dwelling as to have caused the trial judge to comment she did not think this was really a "burglary." Although technically it was a "burglary," the undisputed record adequately supports her conclusion that the offenses were committed in an unsophisticated manner. See State v. Sachs, 526 So.2d 48 (Fla.1988); Randall; State v. McCloud, 721 So.2d 1188 (Fla. 5th DCA 1998); State v. Merritt, 714 So.2d 1153 (Fla. 5th DCA 1998).
The trial judge in this case had the option to exercise her discretion to depart downwards, for the two reasons discussed above. Based on this record, these reasons were supported by substantial and competent evidence.
AFFIRMED.
PETERSON, J., concurs.
HARRIS, J., dissents with opinion.
HARRIS, J., dissenting.
I respectfully dissent.
I understand the court's concern for this young defendant. Its leniency, however, is not permitted by the legislature. I agree with the State that the downward departure sentence entered herein is contrary to law.
It is true that Gilson's criminal conduct stems from his serious alcohol and marijuana problem. But this problem has resulted in very serious consequences which cannot be so easily ignored. In this case, Gilson was charged with grand theft auto, driving with license suspended or revoked, two separate counts of possession of cannabis, burglary of a dwelling, and grand theft of a revolver. Gilson's conduct, however sympathetic Gilson himself may be, put other people at risk.
On August 2, 2000, Gilson was involved in an accident and fled the scene. Cannabis was found in the vehicle. While on bond, Gilson came home one evening intoxicated and, because his mother was incensed, broke into a friend's apartment, threw firearms out the window into the backyard (the State urged to be retrieved later), and slept in the apartment where he was discovered the next day.
A few months later, Gilson again drove intoxicated and ran his vehicle (actually his girlfriend's vehicle) into a stationary object. On the way home from this incident, Gilson saw another vehicle at a driving range with keys in the ignition and took it.
Gilson ultimately entered a straight-up plea of no contest. In asking for youthful offender treatment, defense counsel urged the court that Gilson had never committed a single offense while sober and that all of his problems stemmed from his serious substance abuse.
Instead of considering youthful offender treatment, a program the judge found questionable, the court entered this downward departure sentence (prison terms suspended but with community control and probation) based on two reasons:

*732 1. The capacity of the defendant to appreciate the criminal nature of the conduct or to conform that conduct to the requirements of the law was substantially impaired; and, separate but very similar,
2. At the time of the offense, the defendant was too young to appreciate the consequence of the offense.
The court's first reason seems akin to a voluntary intoxication defense. We need not consider whether this might be a valid defense to the crimes committed herein, because being intoxicated at the time of the offense is certainly and specifically excluded as a basis for downward departure by the legislature. See section 921.0016(5), Fla. Stat.
Although the court's second reason has support in the law, it has no support in the record. See Banks v. State, 732 So.2d 1065 (Fla.1999). Gilson was eighteen at the time of the offenses. There was no testimony that he was immature for his age or that he suffered any mental abnormality which would affect his ability to comprehend. See State v. Scanlon, 721 So.2d 392 (Fla. 2d DCA 1998). Indeed, unless being eighteen will always justify a downward departure, this record is simply insufficient to sustain the downward departure herein.
I would reverse and remand for resentencing, urging the court to again consider whether the youthful offender program might properly apply to this case.
NOTES
[1] In case number 2001-00048-CF, Gilson was charged by information with five counts: grand theft auto (3F); driving with license suspended/revoked (1M); fleeing to elude (1M); resisting arrest without violence (1M) and possession of cannabis under 20 grams (1M). In case number 2000-00800-CF, Gilson was charged by information with five counts: two counts of burglary of a dwelling with different victims (2F), possession of cannabis under 20 grams (1M); and two counts of grand theft of a .22 revolver (same victim) (3F).
[2] Banks v. State, 732 So.2d 1065 (Fla.1999); State v. Rosa, 774 So.2d 730 (Fla. 2d DCA 2000); E.S.B. v. State, 793 So.2d 1181 (Fla. 5th DCA 2001); State v. White, 755 So.2d 830 (Fla. 5th DCA 2000).
[3] State v. Randall, 746 So.2d 550, 552 (Fla. 5th DCA 1999).
[4] § 921.0016(5), Fla. Stat. (1997); State v. Sanders, 728 So.2d 777 (Fla. 2d DCA 1999).
[5] State v. Brown, 717 So.2d 625 (Fla. 5th DCA 1998).
[6] Attention deficit is characterized by developmentally inappropriate inattention and impulsivity. The Merck Manual at 1978. Short attention span, distractability, and emotional lability are also characteristic. Id. Sufferers of attention deficit misunderstand the nature of information received. Atwater v. State, 788 So.2d 223, 235 (Fla.2001) (Pariente, J. concurring in part and dissenting in part).
[7] See State v. Evans, 630 So.2d 203 (Fla. 2d DCA 1993); State v. Ashley, 549 So.2d 226 (Fla. 3d DCA 1989).